IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 21-cv-01262-WJM-SKV

ALESSANDRA MORALES, ESQ.,

   Plaintiff,

v.

MCDIVITT LAW FIRM, P.C., LAW FIRM OF MICHAEL W. MCDIVITT, P.C., and MICHAEL W. MCDIVITT, ESQ.,

   Defendants.

---

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD CLAIM FOR RELIEF

---

  Defendants, McDivitt Law Firm, P.C. ("MLF"), Law Firm of Michael W. McDivitt, P.C. (collectively referred to as the "Firm" or "MLF")[1], and Michael W. McDivitt, Esq. ("McDivitt," and with MLF the "Defendants"), through their undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(6), respectfully move to dismiss the third claim for relief in Plaintiff's Complaint [Dkt. # 1], for extreme and outrageous conduct / intentional infliction of emotional distress under Colorado common law ("IIED").[2] Defendants also move to dismiss Plaintiff's claim for punitive damages to the extent the claim survives.

---

[1] As noted in Defendants' Corporate Disclosure Statement, filed concurrently with this Motion, the Law Firm of Michael W. McDivitt, P.C. is the former name of, and thus the same entity as, McDivitt Law Firm, P.C.

[2] "Under Colorado law, outrageous conduct and intentional infliction of emotional distress are two different names for the same claim." *Perkins v. Fed. Fruit & Produce Co.*, 861 F. Supp. 2d 1285, 1292 (D. Colo. 2012) (citing *Atsepoyi v. Tandy Corp.*, 51 F.Supp.2d 1120, 1125 (D. Colo. 1999)).

## I.    **PRELIMINARY STATEMENT**

Plaintiff Alessandra Morales ("Plaintiff") over-pled this case, and portions of it should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The gravamen of Plaintiff's Complaint is that Defendants discharged her employment in May 2020, at the outset of the COVID-19 pandemic, while she was on leave under the Family and Medical Leave Act ("FMLA") in connection with the birth of her children. In the current iteration of the Complaint,[3] Plaintiff alleges interference and retaliation claims arising out of this termination under the FMLA, but also tacks on an IIED claim as her third cause of action.

However, Plaintiff fails to state a claim for IIED for multiple reasons. For one, the allegations in Plaintiff's Complaint are not nearly so extreme and outrageous to sustain an IIED claim as a matter of law. Indeed, courts have dismissed IIED claims on Rule 12 motions where the allegations were far more egregious than anything Plaintiff has alleged here. *E.g.*, *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999) (finding allegations that employer attempted to scapegoat employee for drug trafficking failed to state IIED claim). The claim is also deficiently pled because it is entirely duplicative of Plaintiff's FMLA claims. Further, her claim is preempted by the Colorado Workers' Compensation Act because it arose from her employment.

Thus, this Court should dismiss Plaintiff's IIED claim with prejudice.

---

[3] Plaintiff alleges she also intends "to bring claims against Defendants for sex and pregnancy discrimination in violation of Title VII of the Civil Rights Act, the Colorado Anti-Discrimination Act, and the Pregnancy Discrimination Act . . . once they have been administratively exhausted." Compl. ¶ 1. Defendants have moved for a protective order staying this case pending exhaustion of Plaintiff's administrative remedies, which motion is pending. *See* Defendants' Motion for a Protective Order Staying Discovery Pending Exhaustion of the Administrative Process [ECF # 13] (the "Motion to Stay").

## II.     CONFERRAL CERTIFICATION

Pursuant to Judge Martinez's Practice Standards, counsel for Defendants conferred with counsel for Plaintiff prior to the filing of this Motion over e-mail on June 30, 2021. In this conferral e-mail, counsel for Defendants provided case law for the proposition that Plaintiff has failed to state a claim for intentional infliction of emotional distress, and also proposed staying Defendants' responsive pleading deadline pending resolution of Defendants' Motion to Stay [ECF # 13], which is set for a motion hearing on July 21, 2021 [ECF # 15]. On July 1, 2021, Plaintiff's counsel stated she opposes the relief requested in this Motion and would not agree to extend Defendant's responsive pleading deadline.

## III.     PLAINTIFF'S ALLEGATIONS[4]

Plaintiff's Complaint alleges claims of (1) interference under the FMLA, (2) retaliation under the FMLA, and (3) IIED.

As relevant to this Motion, Plaintiff alleges that Defendants discharged Plaintiff's employment on May 5, 2020 without advance notice approximately two months after the birth of her twins, Compl. ¶¶ 16, 233-35. Plaintiff was not the only Firm employee discharged around this period; the Firm also "laid off employees on or about March 18, 2020, March 26, 2020, and April 2, 2020," which totaled twenty-three employees, due to "the effects of the COVID-19 pandemic." *Id.* ¶¶ 15, 123, 125, 131, 146.

In further support of her IIED claim, Plaintiff alleges her husband had recently been added to her health insurance coverage through the Firm. *Id.* ¶ 240. Further, she claims

---

[4] While Defendants would dispute many of Plaintiff's factual allegations during the course of the litigation, they take them as true for purposes of this motion.

3

Defendants "initially refused to cooperate with Plaintiff to inform her clients of her departure," and that they "encouraged [firm clients] to stay with MLF." *Id.* ¶¶ 241-42. Plaintiff then alleges conclusorily that these actions were "committed . . . recklessly" and caused her emotional distress. *Id.* ¶¶ 243-46. This amounts to the balance of Plaintiff's allegations in support of her IIED claim. *See generally id.* ¶¶ 233-46.

**IV.**    **STANDARD OF REVIEW**

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the claims presented by a plaintiff. *See Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1992). To "survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Pollack v. Boulder Cty.*, No. 17-cv-02444-CMA-NRN, 2019 WL 588196, at *2 (D. Colo. Feb. 13, 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," nor does a complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*; *accord Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012).

**V.**    **ARGUMENT**

Plaintiff has failed to state a claim for intentional infliction of emotional distress or extreme and outrageous conduct ("IIED") for multiple reasons. Principally, her Complaint fails to meet the high pleading threshold necessary to sustain an IIED claim. Her IIED claim is also barred by the Colorado Workers Compensation Act, which provides the exclusive remedy for on-the-job injuries, including claims for emotional distress. Further, Plaintiff's claim for relief seeking punitive damages must be dismissed or struck for being premature.

4

A.     **Plaintiff Fails To State A Claim For IIED Against Any Defendant**

To state a claim under Colorado law, Plaintiff must show that (1) Defendants engaged in extreme and outrageous conduct; (2) recklessly or with the intent of causing Plaintiff severe emotional distress; (3) causing her to suffer emotional distress. *E.g.*, *McCarty v. Kaiser–Hill Co., LLC*, 15 P.3d 1122, 1126 (Colo. App. 2000). As to the first element, the level of outrageousness required is "extremely high." *Id.* "Liability has been found only where the conduct has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citation omitted); *see Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999) (affirming that "the level of outrageousness required for conduct to create liability for intentional infliction of emotional distress is <u>extremely high</u>") (emphasis added).

Relying on these principles, this Court has opined that "[t]he tort of outrageous conduct was designed to create liability for a very narrow type of conduct." *Maiteki v. Marten Transport. Ltd.*, 4 F. Supp. 3d 1249, 1256 (D. Colo. 2013) (Martinez, J.) (citing *Green v. Qwest Servs. Corp.*, 155 P.3d 383, 385 (Colo. App. 2006)); *id.* (granting motion to dismiss for "fall[ing] far short of meeting the exacting standard required to state a claim for intentional infliction of emotional distress," where claim involved allegation that former employer had provided false information that hindered employee's ability to obtain employment). "Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are insufficient; only conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community, will suffice." *Archer v. Farmer Bros. Co.*, 70 P.3d 495, 499 (Colo. App. 2002), *aff'd*, 90 P.3d 228

(Colo. 2004).

Further, "[p]roof of the tort of outrageous conduct under Colorado law must consist of either an extreme act, both in character and degree, or a pattern of conduct from which the decisive conclusion is that infliction of severe mental suffering was calculated or recklessly or callously inflicted on the plaintiff." *Brunetti v. Rubin*, 999 F. Supp. 1408, 1412 (D. Colo. 1998). Said another way, to meet the minimum threshold level of conduct to state a cause of action for outrageous conduct, "the plaintiff must allege either that: (1) defendant has engaged in a pattern of conduct that intended to cause or recklessly did cause severe emotional distress; or (2) if the incident is isolated, defendant blatantly and severely harassed plaintiff." *Id.* The tort "is not meant to be an 'incantation to augment damages' in an employment discrimination or any other state or federal tort action." *Visor v. Sprint/United Mgmt. Co.*, 965 F. Supp. 31, 33 (D. Colo. 1997).

The court decides in the first instance whether the facts alleged rise to the level of an Outrageous Conduct claim. *Rugg v. McCarthy*, 476 P. 2d 753, 756 (Colo. 1970). If allegations fail to meet the standard of atrocious and intolerable behavior, the matter cannot be submitted to a jury. *Widdifield v. Robertshaw Controls Co.*, 671 P. 2d 989, 991 (Colo. App. 1983).

Here, Plaintiff has not come close to meeting her pleading burden on an IIED claim. Taking the allegations in the Complaint as true, her principle claim in support of her IIED claim is that the Firm discharged her, along with twenty-three other employees as a result of the COVID-19 pandemic. *See* Compl. ¶¶ 15, 123, 125, 131, 146. A simple discharge of employment without much more cannot sustain an IIED claim.

To be sure, Plaintiff also alleges some additional factors in an unsuccessful attempt to

plausibly plead an IIED claim, including that Defendants knew her pregnancy was "high risk and difficult," her husband had recently been added to the Firm's health insurance as he was "attempting to start his own business," and that the Firm "encouraged" clients that Plaintiff claimed as her own "to stay with MLF." *See* Compl. ¶¶ 234, 240, 242. These allegations even if true do not meet plaintiff's burden to plausibly state an IIED claim, as they are not "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency." *McCarty*, 15 P.3d at 1126. These allegations, either taken individually or collectively, are far less "outrageous" and "extreme" than what courts in this District have found fail to state an IIED claim. *E.g.*, *Coors*, 978 P.2d at 666 (dismissing IIED claim alleging employer forced plaintiff to engage in extensive criminal conspiracy involving drugs and money laundering, and then fired him to scapegoat him for those crimes); *Martensen v. Koch*, No. 13-CV-02411-REB-CBS, 2014 WL 3057172, at *8 (D. Colo. July 7, 2014) (dismissing IIED claim where defendant allegedly relocated plaintiff and his family to Singapore even though it intended to terminate plaintiff shortly thereafter, in order to intimidate and discourage him from alerting the authorities to defendant's alleged tax fraud, and then failed to pay plaintiff a $1.1 million bonus and falsely imprisoned plaintiff by driving him against his will to a remote ranch and ultimately to an airport outside of Denver, and named plaintiff in a frivolous lawsuit).[5] If, as the Colorado Supreme

---

[5] *See also Mott v. Narconon Fresh Start*, No. 14-CV-01293-PAB-KMT, 2015 WL 1259277, at *4 (D. Colo. Mar. 17, 2015) (dismissing IIED claim against substance abuse rehabilitation facility that allegedly failed to provide addiction counseling to plaintiff's daughter and instead directed her to participate in a Scientology ritual requiring her to ingest extreme doses of niacin, among other things, which ultimately resulted in daughter suffering psychological injuries and causing her to relapse); *Medina v. GEO Grp., Inc.*, No. 17-CV-00269-CMA-GPG, 2017 WL 6033688, at *4 (D. Colo. Oct. 5, 2017) (granting motion to dismiss IIED claim where plaintiff alleged defendant unlawfully imprisoned him in an immigration detention center despite his

Court held, allegations that an employer attempted to frame an employee for money laundering and drug trafficking does not rise to the extreme and outrageous level required to state a claim for IIED, then simply discharging a new mother and attempting to retain the Firm's clients certainly is likewise not actionable under an IIED theory.

Relatedly, Plaintiff's IIED claim also fails to state a claim because "[w]here the allegations forming the basis of a claim for outrageous conduct are the same as those forming the basis for a claim of discrimination, and nothing more, they fail to state an independently cognizable claim for which relief can be granted under Rule 12(b)(6)." *Visor*, 965 F. Supp. at 33. As this Court has held, "the case law is clear in that an IIED claim must be distinct from a plaintiff's employment claim." *Ayon v. Kent Denver Sch.*, No. 12-CV-2546-WJM-CBS, 2013 WL 1786978, at *4 (D. Colo. Apr. 26, 2013). *See also Gard v. Teletronics Pacing Sys., Inc.*, 859 F. Supp. 1349, 1354 (D. Colo. 1994) (holding "the facts necessary to prove [an IIED] claim cannot be similar or identical to, nor can they be said to share a common nucleus of operative facts with, the federal statutory claims" in an employment discrimination case).

Here, Plaintiff's allegations in support of her IIED claim mirror those contained in her FMLA claims. *Compare* Compl. ¶ 217 (alleging as part of FMLA claim that "Defendants discriminated and retaliated against her by, *inter alia*, terminating her, . . . [and] initially refusing

---

insistence that he is a citizen); *McKinsey v. GMAC Mortg., LLC*, No. 13-CV-00084-REB-MJW, 2013 WL 3448483, at *12 (D. Colo. July 9, 2013) (granting motion to dismiss IIED claim where plaintiffs alleged defendants fraudulently attempted to foreclose on their property despite lacking any right, title, or interest), *aff'd*, 574 F. App'x 818 (10th Cir. 2014); *Eng. v. Griffith*, 99 P.3d 90, 93 (Colo. App. 2004) (granting motion to dismiss IIED claim arising from the suicide of plaintiffs' son where plaintiffs alleged defendant was aware of decedent's depressive and suicidal thoughts and still refused to leave decedent's residence at his request and instead, continued to argue with the decedent, concluding that the allegations "were not sufficiently extreme or outrageous to support a claim for relief").

to comply with ethical rules and guidelines" regarding notifying clients of Plaintiff's departure), *with id.* ¶¶ 233, 241 (alleging as part of IIED claim that "Defendants terminated Plaintiff" and "initially refused to cooperate with Plaintiff to inform her clients of her departure"). Thus, they are plainly not at all distinct from her employment claims, and should be dismissed for this distinct reason.

### B. Plaintiff's IIED Claim Is Preempted By The Colorado Workers' Compensation Act.

Even if Plaintiff had plausibly alleged an IIED claim, the claim would still be subject to dismissal because employees' civil claims for work-related injuries that arise out of employment are barred by the Colorado Workers' Compensation Act ("CWCA"), which provides the exclusive remedy for on-the-job injuries. *Horodyskyj v. Karanian*, 32 P.3d 470, 474 (Colo. 2001); *see id.* at 476 (noting that "termination from work" is type of injury "inherently related to employment"). Specifically, the CWCA provides the exclusive remedy where, among other things, "the injury . . . is proximately caused by an injury . . . arising out of and in the course of the employee's employment and is not intentionally self-inflicted." Colo. Rev. Stat. § 8–41–301(1). Importantly, the exclusive-remedy provision includes work-related emotional distress, the same damages Plaintiff alleges in support of her IIED claim. *See Abrahamson v. Sandoz, Inc.*, No. 06-CV-00636-W, 2008 WL 906124, at *10 (D. Colo. Mar. 31, 2008) (collecting cases); Compl. ¶ 244 (alleging "Defendants' actions in connection to Plaintiff's termination . . . caused Plaintiff severe emotional distress").

This case is like other decisions in this District that dismissed tort claims on grounds that they are preempted by the CWCA. For example, in *Abrahamson*, Judge Daniel considered whether the CWCA barred the plaintiff's outrageous-conduct claim. 2008 WL 906124, at *10.

Relying on *Horodyskyj* and other cases, the court found the plaintiff failed to allege sufficient facts to support a claim for IIED. *Id.* The claim failed as a matter of law because it was "premised on work-related retaliation . . . ." *Id.* As discussed above, Plaintiff's IIED is based entirely on employment with and discharge from the Firm, and like in the *Abrahamson* case, there is no evidence or allegation to suggest that any harm from Plaintiff's alleged tort claim was the consequence of any personal relationship or dispute with Defendants. *Id.* at *10.

Relatedly, the IIED claim against Mr. McDivitt individually should be dismissed for similar reasons: the Complaint does not allege any wrongdoing outside the scope of his role as a manager and owner at the Firm. *Lincoln v. Maketa*, which dismissed an IIED claim, is instructive. 176 F. Supp. 3d 1179, 1200-01 (D. Colo. 2016), *reversed in part on other grounds*, 880 F.3d 533 (10th Cir. 2018). In that case, plaintiffs alleged individual defendants were, at all relevant times, acting as the county sheriff and undersheriff, but they did not allege that either individual defendant was acting outside the scope of her or his employment. *See id.* at 1201. Therefore, the court held the alleged injuries arose in the course of employment and dismissed the tort, citing a Colorado Supreme Court case that upheld a Rule 12 dismissal on the same grounds. *Id.* (citing *Kandt v. E.B. Evans*, 645 P.2d 1300, 1305 (Colo. 1982)). Similarly, Plaintiff alleges "Mr. McDivitt is the Founder and CEO of MLF," and that he had hiring, firing, supervisory and other managerial authority. *See* Compl. ¶¶ 3, 36-40. And, like the plaintiffs in *Lincoln*, Plaintiff does not allege that Mr. McDivitt was acting outside the scope of his employment at any time in connection with her claims.

Therefore, as in *Abrahamson*, *Lincoln*, and the cases they cite, Plaintiff's IIED claim is barred by the exclusive-remedy provisions of the CWCA and should be dismissed as a matter of

law against all Defendants.

**C.**    **Plaintiff's Request For Punitive Damages As To Her IIED Claim Is Premature.**

If the Court does not dismiss Plaintiff's outrageous-conduct claim entirely, then it should at least dismiss her request for punitive damages against all Defendants. "In Colorado, exemplary or punitive damages are available only by statute," specifically by Colorado Revised Statutes § 13-21-102. *United States Welding, Inc. v. Tecsys, Inc.*, No. 14-CV-00778-REB-MEH, 2014 WL 10321666, at \*20 (D. Colo. Dec. 1, 2014), *report and recommendation adopted*, 2015 WL 5174227 (D. Colo. Sept. 3, 2015). That section states that a plaintiff cannot include a claim for exemplary damages in her initial claim for relief:

> A claim for exemplary damages in an action governed by this section may not be included in any initial claim for relief. A claim for exemplary damages in an action governed by this section may be allowed by amendment to the pleadings only after the exchange of initial disclosures pursuant to rule 26 of the Colorado rules of civil procedure and the plaintiff establishes prima facie proof of a triable issue.

Colo. Rev. Stat. § 13-21-102(1.5)(a).[6] This Court has applied § 13-21-102(1.5) and recommended dismissal under Rule 12(b)(6). *Wessler v. Colonial Nat'l Mortg.*, No. 11-cv-02683-RBJ-KMT, 2012 WL 5949730, at \*16-18 (D. Colo. Aug. 21, 2012); *see also Adams v. Corr. Corp. of Am.*, 187 P.3d 1190, 1197-98 (Colo. App. 2008) (affirming trial court's dismissal of the plaintiffs' claim for exemplary damages because it was premature under § 13-21-102(1.5)(a)); *Pearson v. Geico Cas. Co.*, No. 17-CV-02116-CMA-MEH, 2018 WL 2096348, at

---

[6] Exemplary and punitive damages are synonymous. *E.g.*, *Cahey v. Int'l Bus. Machs. Corp.*, 2020 WL 5203787, at \*15 (D. Colo. Sept. 1, 2020) ("Under Colorado law, a litigant is entitled to an award of exemplary (i.e., punitive) damages if the wrong done . . . is attended by circumstances of fraud, malice, or willful and wanton conduct[.]" ) (citing Colo. Rev. Stat. § 13-21-102(1)(a)).

*11 (D. Colo. May 7, 2018) ("The Court agrees that Plaintiffs' request for 'exemplary and punitive damages' . . . must be dismissed without prejudice"), *report and recommendation adopted in relevant part*, 2018 WL 4368667 (D. Colo. June 3, 2018).[7]

Here, Plaintiff fails to specify to which of her various claims her demand for punitive damages applies. Compl. at Prayer For Relief 6(g). However, the FMLA does not permit recovery of punitive damages, so her IIED must form the basis for her request for punitive damages. *E.g.*, *Farrell v. Tri-Cty. Metro. Transp. Dist. of Oregon*, 530 F.3d 1023, 1025 (9th Cir. 2008) ("It is well-settled that the FMLA, by its terms, "only provides for compensatory damages and not punitive damages." *Liu v. Amway Corp.*, 347 F.3d 1125, 1133 n. 6 (9th Cir .2003) (citing 29 U.S.C. § 2617(a)).". Because Colorado law bars her from seeking such damages as to her IIED claim at this stage of the litigation, the Court should dismiss or strike her request for punitive damages as to the Third Claim for Relief.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's third cause of action, for intentional infliction of emotional distress, with prejudice, dismiss Plaintiff's claim for punitive damages, and order all other relief as the Court deems just and proper.

---

[7] In the alternative to dismissal outright, with leave to amend, some courts strike a claim for punitive damages under Fed. R. Civ. P. 12(f)(2). *E.g.*, *Glaser v. Jordan*, No. CIV-09-CV-01758-REB-MJW, 2010 WL 1268151, at *2 (D. Colo. Mar. 30, 2010) (striking punitive damage claim under Fed. R. Civ. P. 12(f)(2) because "[i]n the State of Colorado, the inclusion of a claim for punitive damages is prohibited in the initial pleading and allowed only after the plaintiff establishes prima facie proof of a triable issue of exemplary damages").

Dated July 13, 2021

s/ David C. Gartenberg
David C. Gartenberg
Carolyn Theiss
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO 80202
Telephone: 303.629.6200
Fax: 303.629.0200
Email: jharpole@littler.com
       dgartenberg@littler.com

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of July 2021, a true and correct copy of the foregoing **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD CLAIM FOR RELIEF**, was filed and served via CM/ECF on the following:

Clayton E. Wire
Emily R. Stevens
OGBORN MIHM, LLP
1700 Lincoln Street, Suite 2700
Denver, Colorado 80203
Telephone: 303.592.5900
Facsimile: 303.592.5910
clayton.wire@omtrial.com
emily.stevens@omtrial.com

_s/ David C. Gartenberg_
David C. Gartenberg