IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 21-cv-1262-WJM-STV

ALESSANDRA MORALES, ESQ.,

    Plaintiff,

v.

LAW FIRM OF MICHAEL W. MCDIVITT, P.C., d/b/a MCDIVITT LAW FIRM, P.C., and
MICHAEL W. MCDIVITT, ESQ.,

    Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS

Plaintiff Alessandra Morales ("Morales") brings this employment action against Defendants Michael W. McDivitt and Law Firm of Michael W. McDivitt, P.C., d/b/a McDivitt Law Firm, P.C. ("MLF") (jointly, "Defendants"). (ECF No. 35.) This matter is before the Court on Defendants' Partial Motion to Dismiss First Amended Complaint ("Motion"). (ECF No. 45.) On April 5, 2022, Morales filed her response to the Motion ("Response") (ECF No. 51), to which Defendants replied on April 29, 2022 ("Reply") (ECF No. 57). For the reasons explained below, the Motion is granted in part and denied in part.

## I. BACKGROUND

The following factual summary is drawn from Morales' First Amended Complaint ("Complaint"). (ECF No. 35.) The Court assumes the allegations contained in the Complaint are true for the purpose of deciding the Motion. *See Ridge at Red Hawk,*

*L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

In 2019, Morales had been employed as an attorney at MLF for more than five years. (ECF No. 35 ¶¶ 69–70.) McDivitt is the CEO and owner of MLF and was Morales' supervisor while she worked there. (*Id*. ¶¶ 3, 51–54.) In July 2019, Morales became pregnant with twins, and in September 2019, she informed MLF of her pregnancy and her intention to take a leave of absence. (*Id*. ¶¶ 94, 97.) Defendants agreed to allow her to take twelve weeks of unpaid maternity leave. (*Id*. ¶ 99.) On February 27, 2020, Morales began her maternity leave, and the next day, she gave birth to twins via Caesarean section. (*Id*. ¶¶ 150–152, 155.)

On May 5, 2020, McDivitt called Morales while she was on maternity leave and terminated her employment. (*Id*. ¶ 194.) When Morales appealed to McDivitt's sense of family and pleaded to retain her employment, he yelled, "this conversation is over." (*Id*. ¶¶ 194–97, 205–06.) And when she asked him to notify her clients of her departure from MLF, he refused. (*Id*. ¶¶ 208–12, 220; *but see id*. ¶ 319 ("After terminating Plaintiff, Defendants *initially refused* to cooperate with Plaintiff to inform her clients of her departure." (emphasis added)).)

After losing her job at MLF, Morales began to build her own law practice. (*Id*. ¶ 229.) Defendants refused to provide her clients with her contact information, and Defendants contacted Morales' clients to dissuade them from transitioning to her new practice. (*Id*. ¶¶ 208–14, 230–35.) Defendants' actions caused Morales to experience fear for her law license, her professional reputation, her new law firm, and her ability to earn a living to support her family. (*Id*. ¶ 252.)

Later in May 2020, Defendants and Morales began negotiating a separation

2

agreement. (*Id.* ¶ 236.) Defendants contacted Morales on May 10, 2022, pressuring her to sign a severance agreement. (*Id.* ¶ 243.) But on May 12, 2020, Morales notified Defendants that she would not sign their proposed separation agreement. (*Id.* ¶ 245.) That same day, Defendants interfered with the settlement of one of Morales' cases by instructing an insurance company to stop payment on a settlement check. (*Id.* ¶¶ 246–54.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk*, 493 F.3d at 1177. Thus, in ruling on a Motion to Dismiss under Rule 12(b)(6), the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir.

2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). However, "[t]he burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "[C]omplaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' . . . 'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III. ANALYSIS

In her Complaint, Morales asserts the following claims: (1) interference in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(1), against both Defendants; (2) retaliation and discrimination in violation of the FMLA, 29 U.S.C. § 2601 against both Defendants; (3) extreme and outrageous conduct/intentional infliction of emotional distress ("IIED") against both Defendants; (4) sex, pregnancy, and disability discrimination in violation of the Colorado Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. §§ 24-34-401 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, against both Defendants; and (5) a claim for aiding and abetting in sex, pregnancy, and disability discrimination in violation of CADA against McDivitt. (ECF No. 35.)

In their Motion, Defendants move for the dismissal of Morales' third and fifth claims for relief. (ECF No. 45 at 1.)

### A. Claim Three: Extreme and Outrageous Conduct and IIED

Defendants argue that Morales' IIED claim should be dismissed because: (1) she

4

has failed to allege sufficient facts to state a claim; and (2) her IIED claim is duplicative of other claims in her Complaint.  (ECF No. 45 at 5.)

The elements of an IIED claim are: "(1) the defendant engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress." *Green v. QWest Servs. Corp.*, 155 P.3d 383, 385 (Colo. App. 2006).

Morales' IIED claim is based on her allegation that McDivitt discharged her nearly two months after she gave birth via Caesarian section, knowing that she had endured a high-risk pregnancy.  (ECF No. 51 at 7.)  Morales argues that her IIED claim is further supported by her allegation that when he discharged her, McDivitt knew that Morales had no other employment and that her family was undergoing financial difficulties.  (*Id*. at 7–8.)  Morales also argues that her claim is supported by her allegation that MLF was reluctant to notify her clients that she left the firm.  Defendants argue that no reasonable juror could find that McDivitt or MLF's conduct was extreme and outrageous based on the factual allegations in the Complaint.  (ECF No. 57 at 4.)

It is well-settled under Colorado law that discharge from employment, without more, is not outrageous conduct.  *Grandchamp v. United Air Lines, Inc.,* 854 F.2d 381, 384 (10th Cir. 1988), *cert. denied,* 489 U.S. 1080 (1989).  Nonetheless, "an employer is not shielded from employee claims of outrageous conduct." *Donaldson v. Am. Banco Corp.*, 945 F. Supp. 1456, 1465 (D. Colo. 1996).  "Thus, the *manner* of discharge, and the employer's conduct is critical to a finding of outrageous conduct." *Grandchamp,* 854 F.2d at 385 (emphasis in original).  Liability for IIED lies only when the plaintiff can prove conduct "so outrageous in character, and so extreme in degree, as to go beyond

5

all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community*."  Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999). The "defendant's conduct must be more than unreasonable, unkind or unfair; it must truly offend community notions of acceptable conduct."  *Grandchamp,* 854 F.2d at 383. Thus, "the termination must be combined with other wrongful behavior, such as a physical assault, or extreme harassment, ridicule, and humiliation to constitute an arguable claim of outrageous conduct."  *LaBrecque v. L3 Commc'n Titan Corp.*, 2007 WL 1455850, at *5 (D.Colo. May 16, 2007).  While the jury determines the ultimate question of whether conduct is outrageous, the court must decide in the first instance whether reasonable persons could differ on the conduct being outrageous.  *Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753, 757 (1970).

Morales' argument that she has stated an IIED claim relies on several inapposite cases involving far more outrageous conduct than the conduct alleged in her Complaint. In *Christen-Loper v. Bret's Electric, LLC*, the defendant terminated a plaintiff's employment, knowing the employee was in the middle of a severe bipolar disorder episode requiring a 72-hour suicide watch.  175 F. Supp. 3d 1213, 1226 (D. Colo. 2016).  In *Archer v. Farmer Brothers Company*, the defendant discharged the plaintiff five days after he had suffered a heart attack, and the defendant delivered the news at the plaintiff's mother-in-law's home where the plaintiff was lying in bed partially undressed recovering from his heart attack.  70 P.3d 495–500 (Colo. App. 2002), *aff'd*, 90 P.3d 228 (Colo. 2004).  Finally, in *Apodaca v. Colorado Nonprofit Development Center*, the defendant discharged the plaintiff while she was on leave for a hysterectomy because she had reported to Denver Department of Human Services

6

("DDHS") that one of the defendant's clients was engaged in prostitution, complying with mandatory reporting obligations. 2017 WL 2869407, at *1–2, 4 (D. Colo. Apr. 4, 2017). In order to terminate the plaintiff's employment, the defendant asked the plaintiff to come into the office under false pretenses—specifically, to discuss the client she had reported to DDHS—then abruptly discharged her. *Id.* at 4.

The case at bar is distinguishable from these three cases for several reasons. First, all three cases involved in-person encounters, but the case at bar involves a telephone conversation. There is far less risk of emotional distress occurring over the phone than in person. Second, in all three cases cited above, the plaintiffs had very recently undergone a serious medical procedure or medical crisis and were on leave while they recovered. But here, Morales' Caesarian section occurred nearly two months before she was discharged, and she does not allege that she was still recovering from the procedure. Finally, *Apodaca* involved an element of deception and humiliation absent in this case because the plaintiff in *Apodaca* was tricked into coming into the office before being abruptly discharged.

Thus, the Court finds that the cases relied upon by Morales are inapposite. And applying the high standard for IIED claims, the Court finds that Morales' allegations are insufficient to state a claim as a matter of law. McDivitt called Morales on the telephone to inform her that she was being discharged. While Morales alleges that McDivitt raised his voice during their conversation, she does not allege that he used derogatory or insulting language. And unlike the cases cited by Morales in her Response, Morales was not in the middle of a medical crisis when she was discharged; nearly two months had passed since her Caesarean section. Further, unfortunately, many individuals who

7

are discharged by their employers do not have other employment and may face economic hardships as a result of losing their job, but their discharge in those circumstances is not so outrageous in character as to go beyond all possible bounds of decency. *Coors Brewing Co.*, 978 at 666. Based on the allegations in the Complaint, the Court finds that a juror could find that McDivitt's manner of terminating Morales' employment was "unkind or unfair," but no reasonable juror could find that his alleged conduct was "atrocious, and utterly intolerable in a civilized community." *Grandchamp,* 854 F.2d at 383 (quotations omitted). Therefore, the Court holds that as a matter of law, Morales' allegations fail to meet the exacting and very high bar to successfully pleading an IIED claim under Colorado common law.

Consequently, this portion of the Motion is granted and Morales' IIED claim is dismissed with prejudice.[1]

## B.   Claim Five: Aiding and Abetting Violations of CADA

Morales asserts an aiding and abetting claim against McDivitt pursuant to the following provision of CADA:

> (1) It shall be a discriminatory or unfair employment practice:
> . . .
>
> (e) For any person, whether or not an employer, an employment agency, a labor organization, or the employees or members thereof: . . .
>
> (I) To aid, abet, incite, compel, or coerce the doing of any act defined in this section to be a discriminatory or unfair employment practice[.]

Colo. Rev. Stat. § 24-34-402.

---

[1] Having dismissed this claim under Rule 12(b)(6), the Court need not address Defendants alternate argument for dismissal.

Defendants argue that this provision of CADA does not permit suits against supervisory employees for actions they took within the scope of their employment. (ECF No. 45 at 11.)   Morales disagrees, arguing that the statute unambiguously allows such suits because the statute specifically states that it applies to "*any person*, whether or not an employer, an employment agency, a labor organization, or *the employees or members thereof*."  (ECF No. 51 at 14 (quoting § 402(1)(e)) (emphasis added).)

For support, Defendants cite *Judson v. Walgreens Co.*, 2021 WL 1207445 (D. Colo. Mar. 31, 2021), in which United States District Judge Christine M. Arguello addressed this precise question and found that § 402(1)(e) does not allow such suits. Judge Arguello interpreted § 402(1)(e) in light of the "intracorporate conspiracy doctrine, which provides that 'a corporation cannot conspire with its own agents or employees' because the corporation and its employees 'are members of the same collective entity' and, therefore, 'there are not two separate people to form a conspiracy.'"  *Judson*, 2021 WL 1207445, at *4 (quoting *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Ed.,* 926 F.2d 505, 509–10 (6th Cir. 1991)).  She concluded that for the purposes of liability under § 402(1)(e), supervisory employees acting within the scope of their employment are not distinct legal entities from their employer.

Morales argues that *Judson* was wrongly decided and that United States Magistrate Judge Scott T. Varholak's recommendation in that same case provides a more persuasive interpretation of § 402(1)(e).  Judge Varholak found "that the unambiguous language of the aiding and abetting provision of CADA, which expresses the legislature's clear intent to allow plaintiffs to assert claims against fellow employees and supervisors who aid and abet an employer's unlawful employment practices,

forecloses application of the intracorporate conspiracy doctrine." *See Judson v. Walgreens Co.*, 2020 WL 9078332 (D. Colo. Sept. 10, 2020), *report and recommendation adopted in part, rejected in part*, 2021 WL 1207445, at *6 (D. Colo. Mar. 31, 2021).

Judge Varholak's recommendation cited several other cases applying the same reasoning to similar statutory language. *Judson*, 2020 WL 9078332 at *5. For example, in *Walters v. President & Fellows of Harvard College*, 616 F. Supp. 471 (D. Mass. 1985), a court interpreted the aiding and abetting provision of the Massachusetts antidiscrimination law, which makes it an unlawful practice "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden [by the law] or to attempt to do so." 616 F. Supp. at 474. The court concluded that the statute "[c]learly[ ] . . . draws a distinction between an employer and its employees, *i.e.*, the statute does not consider them to be a single entity." *Id*. Thus, that court found that the statute allowed suits against employees. *Id*.

Similarly, in *Schram v. Albertson's, Inc.*, 934 P.2d 483 (Or. Ct. App. 1997), a court found that "[t]he plain text of the [Oregon State] statute"—which makes it an unlawful employment practice "[f]or any person, whether an employer or an employee, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden" by the statute—"clearly encompasses both employees and employers and reaches those employees who aid and abet unlawful employment practices." *Id.* at 488. Consequently, that court found that the statute permitted suits against employees. *Id*.

On the other hand, Judge Arguello's opinion was based on the reasoning of the Kentucky Court of Appeals in *Cowing v. Commare*, 499 S.W.3d 291, 295 (Ky. Ct. App.

10

2016), *as modified* (Sept. 9, 2016). However, the aiding and abetting provisions under consideration in *Cowing* did not include an express reference to "employees" as is found in § 402(1)(e) and in the provisions at issue in *Walters* and *Schram*. *See* Ky. Rev. Stat. § 344.280(2) ("It shall be an unlawful practice for a person, or for two or more persons to conspire . . . [t]o aid, abet, incite, compel, or coerce a person to engage in any of the acts or practices declared unlawful" by the law).

The Court agrees with the reasoning of Judge Varholak's recommendation; and it is persuaded by the reasoning of the *Walters* and *Schram* courts, cited in his recommendation. "When interpreting the language of a statute, the starting point is always the language of the statute itself." *United States v. Quarrell*, 310 F.3d 664, 669 (10th Cir. 2002). Here, liability for aiding and abetting pursuant to § 402(1)(e) applies to "any person, whether or not an employer, . . . or the employees . . . thereof." The aiding and abetting provision draws a clear distinction between an employer and its employees; thus, the statute cannot be reasonably interpreted to consider employer and employee as a single entity.

Thus, the Court finds that the language § 402(1)(e) of CADA unambiguously permits suits against supervisory employees for actions they took within the scope of their employment. Consequently, this portion of the Motion is denied.

### IV. CONCLUSION

For the foregoing reasons, the Court ORDERS that Defendants' Partial Motion to Dismiss First Amended Complaint (ECF No. 45) is GRANTED IN PART AND DENIED IN PART as follows:

11

1. The Motion is GRANTED with respect to Morales' IIED claim against both Defendants, and Morales' third claim for relief is DISMISSED WITH PREJUDICE;

2. The Motion is DENIED in all other respects.

Dated this 16th day of November, 2022.

BY THE COURT:

_____
William J. Martinez
United States District Judge